**In re Joseph & Elaine PRIMACK Debtors.**

**Gui GOVAERT, Plaintiff,**

**v.**

**Joseph & Elaine PRIMACK, Defendants. (Two Cases)**

Bankruptcy No. 87–01464–BKC–TCB.
Adv. Nos. 87–0463–BKC–TCB–A,
87–0474–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

May 23, 1988.

Wedgle & Shpall, P.C., Richard J. Wedgle, Denver, Colo., for Wanger.

Joel Aresty, Miami, Fla., for debtors/defendants.

Gui L.P. Govaert, Miami, Fla., trustee.

Patricia S. Redmond, Miami, Fla., for trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

By stipulation between the parties, these two adversary proceedings in the same bankruptcy were tried on January 28, 1988 upon the evidentiary record made November 5, 1987 in the trial of another adversary proceeding in this same bankruptcy: *Richard Wanger v. Joseph & Elaine Primack*, No. 87–0462.

In that action, a creditor sought denial of these debtors' discharges under 11 U.S.C. § 727(a)(2)(A) or exception from their discharges under § 523(a)(2)(A). This court found that the evidence failed to support either count as to either debtor and the complaint was dismissed with prejudice on December 18, 1987. That judgment is presently under appeal to the district court.

In the first of the two actions presently pending before me, 87–0463, the bankruptcy trustee seeks denial of the debtors' discharges under § 727(a)(2)(A) and (4)(A), (B) and (C).

In 87–0474, the trustee seeks denial of the debtors' homestead exemption, the avoidance under §§ 544(b), 547(b) or 548(a)(1) of two transfers as either preferential or fraudulent, and the recovery of the property in question or its value.

This is a core proceeding under 28 U.S.C. § 157(b)(2).

Before the trial of the earlier, creditor's action, 87–0462, and its dismissal, the trustee had negotiated and sought approval of a settlement for $10,000 of these two present actions (87–0463 and 87–0474). The settlement was opposed by Wanger (the unsuccessful plaintiff in 87–0462) and two other creditors on the ground that it was inadequate.

Upon condition that they post a cash bond to guarantee the amount of the negotiated settlement, I denied approval of the trustee's settlement and permitted the three creditors to prosecute the trustee's two actions. The bond has been posted. The three creditors have entrusted the prosecution to the same attorney who was subsequently unsuccessful in 87–0462.

(1) The Debtors' Discharges (87–0463)

*(A) The Significance of the Allegations*

Because plaintiff's proof contains considerable detail irrelevant to the allegations presently before me (the proof was received in the trial of another case upon different allegations), and because plaintiff's argument makes no effort to stay within the allegations, it is important to note that the deadline established in this case for causes of action under § 727 was October 6, 1987, the day the complaint in 87–0463 was filed. (CP 38, File No. 87–01464).

The deadline is specified by B.R. 4004, which also prohibits any extension unless requested before the deadline. No extension was requested.

■ The specific deadline for these allegations restricts this court's general discretion under Fed.R.Civ.P. 15(b), B.R. 7015, to permit pleading amendments to conform to proof, which was never requested in this case. Any other conclusion would vitiate B.R. 4004. *Chaudhry v. Ksenzowski (Matter of Ksenzowski)*, 56 B.R. 819, 829–30 (Bankr.E.D.N.Y.1985) (collecting the decisions on this point); 4 *Collier on Bankruptcy* (15th Ed. 1988) ¶ 727.14[4].

■ Furthermore, the grounds for denial of discharge asserted here by the trustee all require proof of fraudulent intent and

are, therefore, within the requirement of Fed.R.Civ.P. 9(b), B.R. 7009, that the circumstances be pleaded "with particularity." (Note 3, *supra*).

I have, therefore, considered only the evidence and the argument which is relevant to the specific details alleged in the trustee's complaint opposing the discharges.

### (B) Fraudulent Transfer § 727(a)(2)(A)

The complaint charges that:

"the execution of said *Promissory Note, Security Agreement, UCC filing* and delayed funding on said obligation was made or incurred with the intent to hinder, delay and/or defraud creditors of the Debtors' estate by transferring, removing and concealing property of their estate." (CP 1, ¶ 16) (Emphasis added).

Section 727(a)(2)(A)[1] precludes discharge if:

"the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, *within one year before the date of the filing of the petition.*" (Emphasis added).

The bankruptcy petition was filed April 20, 1987. The acts specified in this complaint all occurred more than a year before that date.

■ The Note, Security Agreement, and U.C.C. filing occurred April 7, 1986. The "delayed funding" neither "transferred, removed, destroyed, or concealed property of the debtor" and cannot, therefore, be rele-

vant in determining whether the charged fraudulent acts occurred within the year before bankruptcy.

In evident admission that the pleading fails to state a ground for the denial of discharge under § 727(a)(2)(A), plaintiff's trial memorandum argues that:

"It is submitted that a transfer of an interest of the Debtor in property occurred less than one year before the date of the filing of the petition *by virtue of the public trustee foreclosure sale of Debtors' Colorado home.*" (CP 25, at 38) (Emphasis added).

There is no hint in this complaint that the foreclosure sale, which took place June 17, 1986, is the act charged as the predicate for the denial of these debtors' discharges.

■ However, even if it had been alleged, this sale of the debtors' former home in foreclosure of *another* note and security agreement[2], at public auction by a public official could not possibly be a fraudulent transfer within the purview of § 727(a)(2)(A) by either of these debtors.

The complaint fails to state a ground for relief.

■ Alternatively, I find that there was no intent by either of these debtors to hinder, delay, or defraud creditors by the acts alleged. All of the money borrowed by the debtor husband from his brother was immediately invested in the family corporation, the sole source of creditor claims against the debtors.

■ Though not explicit in the complaint and not argued in plaintiff's briefs, this complaint could arguably constitute an allegation that the Note and Security Agreement to the brother was a "concealment" which persisted into the year before bankruptcy.[3] If so, I find no concealment dur-

---

1. The complaint alleges (¶ 1) that it is restricted to § 727(a)(2)(A) and (4)(A), (B) and (C). The only allegation under § 727(a)(4) is in ¶ 17, quoted and discussed *infra.*

2. The complaint (CP 1, ¶¶ 11, 12, 13) identifies only an April 7, 1986 note to the brother of the debtor husband, secured by a lien only on *personalty*, signed only by the debtor husband. The foreclosure was of an earlier second mortgage to an unrelated third party. The sale was

made to the brother, who held a fourth mortgage by virtue of yet another note, and who redeemed the property by paying the maximum bid received at public auction.

3. B.R. 7009 makes Rule 9(b), Fed.R.Civ.P., applicable here. It requires that:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

ing the year before bankruptcy (or before then) with respect to any event alleged (or argued) in this case.

Plaintiff is entitled to no relief under § 727(a)(2)(A) as to either debtor.

### (C) False Oaths § 727(a)(4)(A), (B) and (C)

The only allegation under these subsections merely rephrases the statutory provisions:

"As set forth above, the herein Debtors have also knowingly and fraudulently, in or in connection with this pending Bankruptcy case, made false oaths or accounts; presented or used false claims; given, offered, received or attempted to obtain money, property or advantage, or a promise of money, property or advantage, for acting or forebearing to act." (CP 1, ¶ 17).

None of the preceding 16 paragraphs identifies a false oath, account, claim or any payment or promise for acting or forbearing to act.

■ Plaintiff has failed, therefore, to allege any basis for denial of either debtors' discharge under these subsections. Ruling upon the motion (CP 5) by defendants to dismiss this allegation was reserved (CP 13). It is now granted. Alternatively, I also find that there is no evidence before me of any act which falls within the provisions of these subsections.

Plaintiff has failed to establish a basis to deny the discharge of either debtor.

### (2) The Debtors' Transfers (87–0474)

### (A) Purchase of Florida Home § 544(b)

Count 1 of this action points to the debtors' move from Colorado to Florida and their purchase on December 31, 1985 of a home in Miami with a cash payment of $450,000, and alleges that the debtors' purpose was to defraud creditors by substituting their entitlement to Florida's unlimited homestead exemption for the $20,000 Colorado exemption.

The trustee prays (1) avoidance of the purchase as a fraudulent transfer, (2) denial of the debtors' claimed homestead exemption, and (3) imposition of a constructive trust upon the home for the money paid.

■ This relief is unavailable under § 548, which relates only to transfers within a year before bankruptcy. The move and purchase occurred 16 months before bankruptcy. The trustee is, therefore, proceeding under § 544(b):

"The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title."

The Florida statute, *Fla.Stat.* § 726.01, contains no time limitation. It voids transfers made with "intent to delay, hinder or defraud creditors".[4]

■ The purchase of the Florida home was an arm's length transaction through a broker with strangers at a fair price. There is no basis to avoid the purchase of the home or the payment made. We are concerned, therefore, solely with the validity of the claimed homestead exemption.

There are holdings by both Florida and federal courts subjecting homesteads to creditors' claims. If a clear and principled statement of these holdings can be distilled from the cases, that statement need not be attempted here.[5]

---

*This contention must, therefore, be rejected.*

4. The trustee has neither alleged nor proved that there is "a creditor holding an unsecured claim that is allowable under section 502." I agree with the debtors that no cause of action to avoid a transfer under § 544(b) has been stated or proved. *Schaps v. Bally's Park Place, Inc.,* 58 B.R. 581, 584 (E.D.Pa.1986), *aff'd* 815 F.2d 695 (3rd Cir.1987). 4 *Collier on Bankruptcy* (15th Ed.1988) ¶ 544.03[1] p. 544–20. Since the alleged fraudulent transfer is the predicate for the remaining relief demanded in this count, the failure to plead and prove this essential element is dispositive.

5. After practicing 40 years with these holdings, I humbly suggest that when the conduct of the debtor so offends the sensibility of a court that it cannot accept the exemption, that court presumes an exception to the constitutional provision that is completely contrary to its plain language. Because the factual permutations are infinite and the sensibility levels of courts near-

It is enough to say that the trustee has not identified (nor have I found) any holding sufficiently similar factually to this case to overcome the constitutional shield protecting the homestead of these debtors. I find, therefore, no extrinsic fraud or actual intent on the part of either debtor to hinder, delay or defraud any creditor in connection with the debtors' establishment of their Florida homestead.

The down payment for the home came from $850,000 distributed in September 1985 to the debtor husband as his interest in a partnership, Southglenn. There are no creditors of that partnership. There was no outstanding judgment against either debtor. No creditor had any claim against any part of that money. It was his to spend as he pleased.

The debtor husband was in very bad health. In the fall of 1985, both debtors had already severed all their connections with the family business. They wanted not only to provide a home for themselves, but also to be near and to provide a home for their daughter who had recently separated from her husband.

They did not then believe that the long-standing family business would be unable to satisfy its debts which they had guaranteed. They were not then insolvent nor had either of them discussed or considered bankruptcy.

Indeed, they were not even aware, until after they filed for bankruptcy 16 months later, that the Florida homestead exemption was more favorable than that of Colorado.[6]

Section 522(b)(2)(A) grants to debtors in a bankruptcy proceeding all exemptions permitted by State law. It does so without any restriction or limitation whatsoever. And it imposes no restriction on the conversion of nonexempt property into exempt property.

Both the House and Senate Reports state:

"As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 360–61 (1977), *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5963, 6317; S.Rep. No. 989, 95th Cong., 2nd Sess. 75–76, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5787, 5862.

As stated by the Fifth Circuit in *Beall v. Pinckney,* 150 F.2d 467, 471 (5th Cir.1945), in a decision which is binding precedent:

"The intention to do what the Constitution not only permits but provides, is not an intention to hinder and defraud creditors within the meaning of the Florida Statute on that subject. Nothing has been taken from them to which they were entitled."

A more recent Florida decision is consistent. In *Spach v. Kleb,* 112 So.2d 21, 22, 24 (Fla.Dist.Ct.App.1959), a bankruptcy trustee sought to impress an equitable lien against the homestead properties of parties who had theretofore been engaged in a partnership business. After obtaining credit upon representations that the partnership premises were a partnership asset, they had sold the property and had paid off mortgages encumbering their homesteads. They did so "with the expressed intention of hindering, delaying and defrauding their creditors". They filed for bankruptcy ten months later.

---

ly so, I do not see the emergence of a definitive rule anytime soon.

**6.** This last finding conflicts with dicta in 87–0462, the decision which is on appeal:

"I believe that the move to Florida, the purchase of the Florida homestead, and the large down payment were partially motivated by an awareness that under Florida law the entire homestead is shielded from creditors, while only $20,000 is shielded in a Colorado homestead, the debtors' former residence for 23 years." .

After again reviewing the evidence on this point, with the benefit of more thorough briefing by the parties, I now reject in this action the uncorroborated testimony of Wanger and accept the contrary testimony of the two debtors and of Sam Primack.

With one dissent, the court affirmed dismissal of the complaint, saying:

> "the complaint, in substance, charges the failure to apply proceeds from the sale of partnership realty to the payment of creditors' claims. This in no way sets up a special equity in the creditors that would entitle them to specific liens upon the assets of the partnership which had theretofore been divided between the partners and converted into exempt property." *Id.* at 24.

This trustee *suspects* foul play and wants this court to prevent its possible occurrence by voiding the homestead exemption. The trustee has argued:

> "It is completely conceivable the the [sic] Debtors will attempt to transfer their Florida home, after receiving a discharge, back to Sam Primack in satisfaction of all the money that he has put into this scheme and the Debtors will return to Colorado to live in their home that has been secured by Sam Primack. This badge of fraud, when considered with all of the other circumstances of the case, leads to the irresistible conclusion that the Debtor conduct was motivated by fraudulent intent." Trial Memo at 37–38.

"Conceivable" fraud is not a sufficient predicate for relief in this or any other court. Plaintiff has failed to carry his burden of proving entitlement to any relief under count 1.

### (B) Note and Mortgage to Sam Primack § 544(b) and § 547(b)

Count 2 of this action points to the same note and security agreement given by the debtors to the brother of the debtor husband which the trustee has asserted as the predicate for the denial of the debtors' discharges (*supra* at (1)(A)), and alleges that they are fraudulent transfers.

Count 3 makes the same factual allegations, but charges they are preferential transfers under § 547(b).

The prayer here in both counts is for avoidance of the transfer and recovery "of any and all such property recovered".

As has been noted, these events occurred on April 7, 1986, more than a year before bankruptcy. For that reason they cannot be a predicate for any relief under § 548 or § 547, but as has also been stated (*supra* at (2)(B)), there is no such time limitation under § 544(b).

For each of the other reasons set forth above in rejecting the trustee's challenge of the debtors' discharges on account of this transaction, I also reject the trustee's attempt to avoid the transaction and recover the proceeds under § 544(b).

The debtors' note, security and UCC filing in favor of Sam Primack for $263,880 was given for debts of over $300,000, all of which went into the family business. The brother loaned the debtors an additional $135,305 after the note and before bankruptcy. By a separate transaction, the debtors also gave at the same time a fourth mortgage on their Colorado home. These transactions injured creditors only if the collateral given in April 1986 (the home and the personal property) exceeded the value of the future advances. They clearly did not.

The first mortgage was for $44,000. The second was for $265,000. The third was for $2.3 million (also secured by other collateral the value of which cannot be determined from this record). All three mortgages were held by parties completely unconnected to the debtors and Sam Primack.

Ten days after the note and collateral were given to Sam, the second mortgagee foreclosed. At the auction sale held by the Public Trustee two months later, June 17, 1986, the highest bid of $137,749 was by the second mortgagee which bid much less than it was owed. That bid was of course subject to the $44,000 first mortgage.

There is some conflict in the evidence, but I find that the value of the house at that time did not exceed $200,000. Plaintiff has offered no evidence before me as to the value of the personal property (some home furnishings). I find that the total collateral given Sam in April 1986 did not equal the $135,305 of additional advances he made to the debtors after receiving the note and collateral and before bankruptcy.

The debtors' estate was in no way diminished by these transactions. Creditors were not hurt. There is no basis to avoid any or all of these transactions as fraudulent or preferential.

As distinct from its pleaded position, which targets only the promissory note of April 7, 1986, a security agreement and UCC filing, all relating solely to personalty, plaintiff's argument before me is aimed at the debtors' failure to redeem their Colorado house from foreclosure. In plaintiff's words:

> "The issue here is one of fraud. Debtors will argue that there was no reason for them to redeem the home because it was overencumbered. The real question is why didn't they make payments on it instead of moving to Florida and why would Sam Primack take a security interest in that home and put money into it."
> Plaintiff's Response to Defendant's Trial Memo (CP 28 at 13).

Plaintiff's answer to his rhetorical question has been quoted and discussed above. (*Supra* (2)(A)). The trustee points out that when the debtors did not redeem the Colorado house from the foreclosure sale, Sam Primack did so as the fourth mortgagee by paying $148,666 (to cover the high bid plus interest). His title is subject to the first mortgage of $44,000 but free of the second and third. If the house is worth as much as $200,000, he acquired an equity of $51,334.

It is not suggested that Sam Primack's effort to salvage something from his collateral was improper in any respect. If it was profitable, which remains to be seen, three other mortgagees had the same opportunity and passed it up.

The trustee's only argument, therefore, is the same one he has made with reference to the debtors' purchase of their Florida homestead, quoted and discussed above. (*Supra* (2)(A)). The trustee *suspects* foul play. By adding two transactions, neither of which is fraudulent or prejudicial to creditors in any way, the trustee asks this court to undo both transactions in order to prevent the *possibility* of fraud.

The trustee has failed to carry his burden of proving entitlement to any relief under either count 2 or count 3.

(3) Debtors' Motion for Sanctions Under B.R. 9011

 The debtors' trial memo, at 33, incorporates a motion for sanctions under B.R. 9011 against the plaintiff trustee and his counsel. Sanctions are provided by the Rule against parties and attorneys who *sign* pleadings in violation of B.R. 9011. These two complaints were signed only by the trustee's attorneys, Ms. Redmond and Ms. Ryan. These attorneys recommended settlement of both actions for $10,000 in lieu of trial. Neither has notice of this motion.

The motion is denied, without prejudice to its renewal by separate pleading with notice to Ms. Redmond and Ms. Ryan.

*Conclusion*

Each of these two adversary proceedings (87–0463 and 87–0474) is dismissed with prejudice. Costs may be taxed on motion.