PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-5514
_____

D. C. Docket No. 95-6042-CV-SMA
Bkcy. C. Docket No. 94-21320

IN RE: BARBARA J. JOST,

Debtor.

KEY BANK OF MAINE,

Plaintiff-Appellant,

versus

BARBARA J. JOST,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(March 18, 1998)**

Before ANDERSON and CARNES, Circuit Judges, and O'KELLEY*, Senior District
Judge.

ANDERSON, Circuit Judge:

_____

* Honorable William C. O'Kelley, Senior U.S. District Judge for the Northern District
of Georgia, sitting by designation.

In this case, a creditor objected, pursuant to Bankruptcy Rule 4003(b), to a

debtor's claimed Florida homestead exemption. In making its objection, the creditor

contended that the debtor converted non-exempt assets from the sale of a Missouri home into an exempt Florida homestead with an intent to hinder, delay, or defraud her creditors. The bankruptcy court denied the creditor's objection and the district court affirmed. We vacate and remand the case with instructions for the district court to remand the case to the bankruptcy court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In 1986, Barbara J. Jost ("Jost"), her husband, and their family moved to Missouri where Jost and her husband purchased a home and a business ("Jostco"). Jostco experienced financial difficulties in 1990 and the business filed for bankruptcy. Consequently, on June 22, 1990, Jost and her husband sold their Missouri home and received net proceeds of approximately $163,000. Jost and her husband divided the proceeds equally, each receiving $81,500. In July 1991, Jost used most of the net proceeds received from the sale of the Missouri home to purchase a home in Florida and to pay for moving costs to Florida.[1] This Florida home is titled only in Jost's name. In October 1991, Jost satisfied the $138,000 mortgage on the home using primarily payments she received from her brother-in-law under a promissory note.[2]

_____

[1] Jost made an approximately $54,500 cash down-payment towards the purchase of the Florida home and obtained an approximately $138,000 mortgage on the home.

[2] Jost used the approximately $130,000 from the pay off of the promissory note to satisfy most of her

2

Meanwhile, in April 1991, Key Bank had received an assignment of certain obligations owed by Jost and her husband on a boat loan. Key Bank received an assignment from the Resolution Trust Corporation ("RTC") of a marine financing agreement, a marine security agreement, and a first preferred ship mortgage with respect to a boat loan obtained in 1985 by Wavemakers, Inc. ("Wavemakers"), a company owned by Jost and her husband. Jost personally guaranteed the loan.[3] During 1991, after the assignment, Key Bank made demand on Wavemakers for payment of the obligations on the boat loan.

On April 6, 1994, Jost filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Jost claimed a homestead exemption for the Florida home titled in her name and valued at $184,000.[4] Key Bank filed an objection, pursuant to

---

mortgage on the Florida home. The remaining balance of the mortgage was paid from Jost's personal funds.

[3] Wavemakers was the primary obligor on the loan, and Jost personally guaranteed the loan to Manufacturers Hanover Financial Services of Florida, Inc. ("Manufacturers Hanover"). Manufacturers Hanover assigned Jost's promissory note to Horizon Financial, F.A., and in April 1991, this note and the rights under the boat loan were assigned to Key Bank by the RTC acting as Receiver for Horizon Financial.

[4] Article X, § 4(a) of the Florida Constitution provides for an unlimited homestead exemption as follows:
    Homesteads-exemptions
    (a) There shall be exempt from forced sale
    under process of any court, and no judgment,
    decree or execution shall be a lien thereon,
    except for the payment of taxes and assessments

Bankruptcy Rule 4003(b), to Jost's claimed exemption alleging that Jost purchased her

Florida home, an exempt asset, with non-exempt assets[5] with the intent to hinder,

delay, or defraud her creditors.[6] In overruling Key Bank's objection to Jost's

homestead exemption, the bankruptcy court concluded that Key Bank failed to

establish a prima facie case for disallowing Jost's homestead exemption because the

record was "devoid of any evidence of eminent [sic] threat of levy, attachment,

garnishment, or execution on a judgment just prior to the debtor's purchase of the

Florida homestead." Bankruptcy Court Order, September 27, 1994, at 5. The

bankruptcy court stated that "[a]lthough Key Bank produced a copy of the 1991

Judgment [obtained by Maple Park Real Estate Company Employees Pension Plan and

Trust ("Maple Park judgment")] against the Debtor's husband, there was no credible

---

```
    thereon, obligations contracted for the
    purchase, improvement or repair thereof, or
    obligations contracted for house, field or
    other labor performed on the realty, the
    following property owned by a natural person:
        (1) a homestead . . .
Fla. Const. art. X, § 4(a)(1).
```

[5] Key Bank asserts, and Jost concedes, that, because Missouri's homestead exemption is limited to only $8,000, the proceeds in excess of $8,000 from the sale of Jost's Missouri home should be considered non-exempt assets.

[6] Key Bank also raised other objections that are not relevant to this appeal.

evidence produced to indicate that the Debtor was being pursued by creditors at the time of the purchase of the disputed homestead property." Id. at 4.[7]

Thereafter, Key Bank moved for rehearing. In this motion, Key Bank reiterated its argument that Jost's testimony at the first meeting of creditors ("§ 341 meeting") and at Jost's Bankruptcy Rule 2004 examination ("2004 examination") should have been allowed as substantive evidence at the evidentiary hearing to support Key Bank's objection.[8] Key Bank contended that the bankruptcy court erred in concluding that the 1991 Maple Park Judgment was only against Jost's husband and thus "there was no credible evidence produced" indicating that Jost was being pursued by creditors at the time she purchased the Florida homestead. In the creditors' § 341 meeting, Jost testified that all of the liabilities listed in her bankruptcy schedule, including the Maple Park judgment, were joint debts on which she was liable with her husband.[9] Finally,

---

[7] Part of the confusion regarding the 1991 Maple Park judgment arose because, on its face, the judgment was against "Frank Jost, et al.," and the judgment failed to indicate who was designated by the term "et al."

[8] The bankruptcy court only allowed the transcripts from the § 341 meeting and 2004 examination to be introduced for the purpose of impeaching Jost's testimony at the bankruptcy hearing and not as substantive evidence because Jost was present and testified at the bankruptcy hearing.

[9] In her 2004 examination, Jost testified that the Maple Park judgment arose from a second loan on the Missouri home that she owned jointly with her husband, and strongly implied that the 1991 Maple Park judgment was against both her and her husband.

5

Key Bank also pointed to other evidence indicating that Jost was being pursued by creditors, and was aware thereof, at the time of her conversion of non-exempt assets into the exempt Florida homestead. However, the bankruptcy court denied the motion for rehearing and Key Bank appealed.

Key Bank appealed the bankruptcy court's order arguing, inter alia, that (1) an imminent threat of levy, attachment or execution is not essential to the prima facie showing necessary to defeat a claimed homestead exemption, and (2) even if an imminent threat of levy, attachment, or execution is necessary to defeat a homestead exemption, the bankruptcy court erred by disallowing such evidence (i.e., Jost's admissions at the § 341 meeting and her 2004 examination). The parties were granted oral argument before the district court, and on October 28, 1996, the district court entered an order affirming the ruling of the bankruptcy court. Relying on Bank Leumi Trust Co. v. Lang, 898 F.Supp. 883 (S.D.Fla. 1995), the district court found that Jost was entitled to her homestead exemption even if she acquired the Florida homestead for

6

the sole purpose of hindering, delaying, or defrauding her creditors.[10] Key Bank

appeals the district court's order.

## II. DISCUSSION

The following legal issue was the primary focus of the parties' briefs on appeal:

whether a claimed Florida homestead exemption can be successfully challenged if the

home is purchased with non-exempt assets with the actual intent to hinder, delay, or

defraud creditors in violation of Fla. Stat. § 726.105.[11] In <u>Bank Leumi Trust Co. v.</u>

<u>Lang</u>, 898 F. Supp. 883 (S.D. Fla. 1995), the district court answered that question in the

---

[10] In an alternative holding, the district court construed the bankruptcy court's order as a finding of fact that Jost had no intent to hinder, delay, or defraud creditors, conducted a <u>de novo</u> review of the evidence including the erroneously excluded evidence (Jost's testimony at the § 341 meeting and 2004 examination), and affirmed the bankruptcy court's finding. We construe this alternative holding as a conclusion that the exclusion of evidence was harmless. As indicated below, we disagree.

[11] Section 726.105 provides that
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
  (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; . . .

negative.[12]  Our research leads us to believe that this question is a significant issue of

Florida law with respect to which the Florida precedent is not clear.  See Butterworth v.

Caggiano, 605 So. 2d 56, 60 (Fla. 1992) (holding that a homestead was exempt from

civil or criminal forfeiture under Florida's RICO Act because forfeitures are not

mentioned "either expressly or by reasonable implication," in the three enumerated

exceptions to Florida's homestead exemption);[13] Palm Beach Savings & Loan Ass'n v.

Fishbein, 619 So. 2d 267, 270 (Fla. 1993) (reasoning that the equitable circumstances of

the case fell within "the sprit of the exceptions" to the constitutional exemption of

homestead property, and thus allowing a creditor to enforce a lien against a debtor's

homestead under the doctrine of equitable subrogation);[14] Fla. Stat. § 220.30 (providing

---

[12] We refer to this issue as the Bank Leumi issue.

[13] Article X, § 4 of the Florida Constitution provides for three exceptions to the homestead exemption in which homesteads may be used to satisfy court judgments: "(1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty."

[14] In Common Law Equity Defeats Florida's Homestead Exemption, 68 Fla. B.J. 54, 56-57 (1994), Greta K. Kolcon recognizes that Fishbein may be a limited holding because the creditor "stood in the shoes" of prior lienors who could have foreclosed on the debtor's homestead under one of the constitutional exceptions to the homestead exemption.  However, Kolcon suggests that the "greater impact of Fishbein" may lie in its potential to invite "creditors to develop the use of equitable concepts as a means of limiting homestead protection."  Id.

8

that a conversion of nonexempt assets to exempt assets is a fraudulent conversion if made with intent to hinder, delay, or defraud creditors); In re Thomas, 172 B.R. 673, 674 (Bankr. M.D. Fla. 1994) (applying § 222.30 in a creditor's successful objection to a claimed homestead exemption).  See also David E. Peterson, Robert F. Higgins, & Matthew E. Beal, Is the Homestead Subject to the Statute on Fraudulent Assets Conversions?, 68 Fla. B.J. 12 (1994); R. Wade Wetherington, Eleventh-Hour Conversions: A Journey into the Labyrinth of Prebankruptcy Planning, 69 Fla. B.J. 18 (1995); Greta K. Kolcon, Common Law Equity Defeats Florida's Homestead Exemption, 68 Fla. B.J. 54 (1994).  If the Bank Leumi issue were necessarily presented in this case, we would certify the question to the Florida Supreme Court, believing as we do that a legal issue of such significance should be settled by that Court.

However, we are not persuaded that the Bank Leumi issue must necessarily be decided in this case, and we are reluctant to certify the question and impose on the good graces of the Florida Supreme Court in such a context.  The legal question would have to be decided only if the bankruptcy court had made a finding of fact (which we could affirm) that Jost's purchase of her home and/or her prepayment of the home mortgage

---

Jost argues that because there are only three specifically enumerated constitutional exceptions to the homestead exemption, see supra note 13, a debtor's intent to hinder, delay, or defraud creditors is not relevant to a claimed homestead exemption.  Key Bank counters that the transfers which resulted in Jost's ownership of the unencumbered homestead were void ab initio under § 726.105, and thus a homestead exemption was never recognized in law.

9

were transfers with intent to hinder, delay, or defraud any creditor.[15]  For the reasons set out below, we cannot conclude that the bankruptcy court made such a finding of fact.  For the same reasons, we conclude that the appropriate resolution is to remand this case.

Even if the bankruptcy court had made such a finding of fact,[16] we could not affirm because the bankruptcy court declined to consider admissible evidence.  Jost has conceded that it was error for the bankruptcy court to decline to consider as substantive evidence Jost's testimony at the § 341 meeting and during her Rule 2004 examination.[17] We have reviewed the record, and unlike the district court, we cannot conclude that this error was harmless.

---

[15] In other words, if the transfers were not with intent to hinder, delay, or defraud creditors, then Jost would prevail and there would be no need to address the Bank Leumi issue.  If the bankruptcy court finds that Jost's transfers were with intent to hinder, delay, or defraud her creditors, then the bankruptcy court should attempt to resolve the Bank Leumi issue. If this decision were then appealed to the district court and subsequently to this court, then we would be inclined to certify the Bank Leumi issue to the Florida Supreme Court.

[16] The parties disagree as to whether the bankruptcy court actually made such a finding of fact.

[17] Jost conceded this evidentiary error in the district court and then acknowledged this concession at oral argument before us.

Moreover, it is unclear whether the bankruptcy court applied the appropriate legal principles in addressing the issue of whether Jost made the transfers with intent to hinder, delay, or defraud creditors. In the district court, the parties agreed that the appropriate legal analysis would take into consideration the "badges of fraud" enumerated in Fla. Stat. § 726.105(2). Although the bankruptcy court's order is unclear, it is doubtful that the bankruptcy court employed this analysis.

We remand this case to the district court with instructions to remand to the bankruptcy court. The bankruptcy court shall hold such further proceedings as it may deem appropriate, and shall make detailed findings including the ultimate finding of fact as to whether Jost's purchase of her Florida home and/or her prepayment of the home mortgage were transfers made with intent to hinder, delay, or defraud any creditor in violation of Fla. Stat. § 726.105. If the bankruptcy court finds that the transfers were with intent to hinder, delay, or defraud creditors, then the court should address the Bank Leumi issue and decide whether Jost should nevertheless prevail.

VACATED and REMANDED.