**In re Calvin LEE, Debtor.**

**Bankruptcy No. 97–08273–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 2, 1998.

Bernard C. O'Neill, Jr., Orlando, FL, for Debtor.

Bradley M. Saxton, Orlando, FL, for First Bank of Clewiston.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on Final Evidentiary Hearing on First Bank of Clewiston's Motion for Relief From Automatic Stay (Doc. 13) and on the Amended Objection to Exemptions filed by First Bank of Clewiston (Doc. 33). Appearing before the Court were Bernard C. O'Neill Jr., counsel for the Debtor; and Bradley M. Saxton, counsel for First Bank of Clewiston. After reviewing the pleadings, exhibits, evidence, receiving live testimony from Miller Couse, Douglas Grace, and Calvin Lee, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Calvin Lee (the "Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on October 6, 1997. The Debtor claimed in his schedules as exempt homestead property the following property located in Lake County, Florida with the legal description:

The North 1/2 of the following described land: The North 660 feet of Government

Lot 4 in Section 19, Township 14.5, Range 27 E. of Tallahassee Meridian

First Bank of Clewiston ("FBC") filed an objection to Debtor's claim of exemption (Doc. 15) and Motion for Relief From Stay (Doc. 13). An amended objection to Debtor's claim of exemption was filed by FBC (Doc. 33).

The Debtor's primary occupation has been as a watermelon farmer in Hendry County, Florida since the 1970's. In 1974, he acquired an interest in land in Hendry County ("Hendry County property") that enabled him to build a flourishing watermelon farming business. The Debtor also used the Hendry County property as his primary residence until December 20, 1996.

In 1984, the Debtor purchased property in Lake County, Florida ("Lake County property"). The Lake County property consists of 18 acres of unimproved land, except for a mobile home attached to the property. The Debtor used the Lake County property each summer after the end of the watermelon harvest as a seasonal vacation place.

FBC loaned the Debtor in 1993 approximately $340,000.00 based upon two promissory notes and a commercial line of credit (the "loans"). The loans provided the Debtor additional liquidity to pay for his annual farming-related expenses. As part of the collateral used to secure this indebtedness, the Debtor gave FBC a mortgage lien on the Hendry County property[1] and a security interest in fanning equipment located in Hendry and Charlotte counties. The Lake County property was not secured by a mortgage lien.

The Debtor defaulted on the loans because of a bad watermelon crop in 1994. The Debtor was indebted to other creditors and did not pay those debts as they became due. Realizing that most of his assets were encumbered by liens, the Debtor transferred the Lake County property by general warranty deed to William and Katherine Herschleb (the "Herschlebs") on June 3, 1994 (Plt's Exh. 1). The Debtor effectuated this transfer to protect himself so that he would

have a place to live if the Hendry County property was foreclosed. The Herschlebs are the Debtor's sister and brother-in-law. No consideration was provided for the transfer. The Herschlebs did not use or occupy the Lake County property after the June transfer.

The Debtor retained exclusive use and control of the Lake County property. He paid all the real property taxes on the property even though the Herschlebs were legal title owners (Plt's Exh. 13). The Debtor continued to use the Lake County property during the summers.

Having defaulted on the loans again in 1995 and 1996, FBC sued and obtained a final judgment against the Debtor in the amount of $497,348.00 in the Twentieth Judicial Circuit, Hendry County, Florida (Case No. 96–21) on October 23, 1996 (Plt's Exh. 3). A certified copy of the final judgment was recorded in Hendry County on October 31, 1996.

FBC recorded its final judgment in other Florida counties to extend its judgment lien to any additional properties owned by the Debtor. On December 6, 1996, FBC recorded a certified copy of the final judgment in Lake County. However, the certified copy did not provide an address for FBC. FBC properly recorded its judgment on January 27, 1997 when it filed an affidavit containing its address (Plt's Exh. 6).

FBC filed a fraudulent conveyance action against the Debtor and the Herschlebs in the Fifth Judicial Circuit, Lake County, Florida (Case No. 96–3062) on December 16, 1996 (Plt's Exh. 4). FBC sought to set aside the June 3, 1994 transfer pursuant to Chapter 726, Fla.Stat., since the deed of conveyance was fraudulent as to FBC. FBC filed a Notice of Lis Pendens on the Lake County property simultaneously with its fraudulent transfer complaint (Plt's Exh. 5). The Notice of Lis Pendens referenced the fraudulent transfer and provided a legal description of the Lake County property.

The Debtor had the Lake County property reconveyed to him on December 19, 1996, by

---

1. FBC instituted a pre-petition foreclosure proceeding against this property. The certificate of

sale for the Hendry County property was filed on April 16, 1997.

general warranty deed. The decision to reconvey the property was made exclusively by the Debtor. The Debtor took affirmative steps after this reconveyance to establish homestead property in Lake County. He recorded the warranty deed in Lake County (Plt's Exh. 2), applied for a homestead tax exemption (Plt's Exh. 10) and changed his Florida driver license to Lake County on December 20, 1996 (Plt's Exh. 9). However, the Debtor did not register to vote in Lake County until March 1997 (Plt's Exh. 12) and kept his bank accounts with FBC in Hendry County until April 1997 (Plt's Exhs. 15–22).

## CONCLUSIONS OF LAW

*The Validity of the December 6, 1996 Judgment Lien*

Section 55.10, Fla.Stat., governs the validity of judgment liens placed on real property in Florida. Section 55.10(1), Fla.Stat., provides, in relevant part:

(1) A judgment, order, or decree becomes a lien on real estate in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation. . . . **A judgment, order, or decree does not become a lien on real estate unless the address of the person who has a lien as a result of such judgment, order, or decree is contained in the judgment,** order, or decree or an affidavit with such address is simultaneously recorded with the judgment, order, or decree. *Id.* (emphasis added).

The rules of statutory construction dictate that "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *In re McCollam*, 612 So.2d 572, 573 (Fla.1993); *Birnholz v. 44 Wall Street Fund, Inc.*, 880 F.2d 335, 341 (11th Cir.1989). Absent an ambiguity, the statute's plain meaning prevails. *See, e.g., Mike Smith Pontiac, GMC,*

*Inc. v. Mercedes–Benz of North America, Inc.*, 32 F.3d 528, 532 (11th Cir.1994) *cert. denied,* 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

The plain language of § 55.10(1), Fla.Stat., requires a judgment creditor to provide its address along with a certified copy of the judgment for an effectual judgment lien to be fixed on real property. FBC recorded its judgment in Lake County on December 6, 1996, but failed to provide an address in the "judgment" or in a simultaneously filed "affidavit." Failure to comply with this procedural safeguard mandated by Florida statute renders its Lake County judgment lien fatally defective. *Cf. Smith v. Venus Condominium Ass'n, Inc.*, 352 So.2d 1169 (Fla.1977) (holding an uncertified copy of the judgment is ineffectual to create a lien on real property). FBC did not properly record its judgment in Lake County by providing an affidavit containing its principal place of business until January 27, 1997.[2] As a result, FBC's judgment lien was not valid until January 27, 1997.

*Did the Debtor Acquire Homestead in Lake County Prior to January 27, 1997*

Article X, § 4 of the Florida Constitution controls this issue, and provides in pertinent part:

4. Homestead—exemptions

(a) There shall be exempt ... the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, ... or if located within a municipality, to the extent of one-half acre of contiguous land upon which the exemption shall be limited to the residence of the owner or his family ... *Id.*

Homestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy. *Hillsborough Investment Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448, 450 (1943); *In re*

---

**2.** Paragraph two of the affidavit signed on January 24, 1997, provides "[FBC's] principal place of business is located at 300 E. Sugarland High-

way, Clewiston, Florida 33440, and its mailing address is Post Office Box 1237, Clewiston, Florida 33440."

*Brown,* 165 B.R. 512, 514 (Bankr.M.D.Fla. 1994). "Under the Florida decisions, actual occupancy of a home with intention to remain there and make it the home of the family, the place of their actual use and occupancy, is essential to the homestead right." *Edward Leasing Corp. v. Uhlig,* 652 F.Supp. 1409 (S.D.Fla.1987); *Cf. Lanier v. Lanier,* 95 Fla. 522, 116 So. 867 (1928) (finding that abandonment of homestead depends upon an actual intention to reside thereon, coupled with the fact of residence). The burden is on the objecting party to establish that the claimant is not entitled to homestead exemption. *See, e.g., In re Bratty,* 202 B.R. 1008, 1009 (Bankr.S.D.Fla.1996); *see also* Fed. R.Bankr.P. 4003(c).

▮▮▮ Homestead property is subject to levy for judgments recorded prior to the time a debtor has established a homestead. *Aetna Ins. Co. v. LaGasse,* 223 So.2d 727, 728 (Fla.1969). FBC has failed to establish, by a preponderance of the evidence, the Lake County property was not the Debtor's homestead prior to January 27, 1997.

The Debtor had the Lake County property re-conveyed to him on December 19, 1996, when the Herschlebs executed a warranty deed in his favor. The Debtor took the warranty deed to the Lake County clerk's office and had it recorded on December 20, 1996. On this same date, the Debtor applied for an ad valorem tax exemption[3] and changed his Florida driver license to reflect Lake County as his new residence. He subsequently moved into a mobile home located on the Lake County property and has remained there since the filing of bankruptcy.

---

**3.** The ad valorem tax exemption privilege itself is set forth in § 196.031(1), Fla.Stat. In pertinent part it provides: Every person who, on January 1, has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her permanent residence ... is entitled to an exemption.... *Id.* Although the status of property as "homestead" for tax exemption purposes is not controlling, it is persuasive evidence as to the Debtor's bona fide intention.

**4.** This might explain why the Debtor still maintained his bank accounts with FBC in Hendry County.

▮ The intention of a person can only be reliably shown by circumstances and acts in support of expressions of intention. *Semple v. Semple,* 82 Fla. 138, 89 So. 638, 639 (1921). The positive acts taken by the Debtor since December 20, 1996, are clear indications that he intended to establish the Lake County property as homestead. The Debtor was often absent from the Lake County property due to work related business in Hendry County.[4] However, the Debtor did reside in a mobile home at Lake County. The Debtor has established actual use and occupancy and has had a bona fide intent to live there since December 20, 1996. Accordingly, the Debtor acquired homestead status on the Lake County property for purposes of satisfying Art. X, § 4 of the Florida Constitution on December 20, 1996.

## The Effect of FBC's Lis Pendens filed on December 16, 1996

FBC in connection with the filing of a fraudulent conveyance action against the Debtor and the Herschlebs filed a Notice of Lis Pendens on the Lake County Property on December 16, 1996.[5] The Notice of Lis Pendens was filed prior to the recording of the Debtor's warranty deed on the homestead.

FBC contends the homestead rights acquired by the Debtor in the Lake County property are subordinate to its Notice of Lis Pendens.

▮ Under Florida law, the filing of a Notice of Lis Pendens neither creates nor enforces a lien. *Nat'l Bank of Sarasota v. Dugger,* 335 So.2d 859 (2nd D.C.A.1976) *cert. denied,* 342 So.2d 1101 (1996) ("Filing notice

---

**5.** 11 U.S.C. § 362(a)(1) in pertinent part provides, "a petition filed under ... this title ... operates as a stay, applicable to all entities, of— the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...." *Id.* The Chapter 7 Trustee has not removed the fraudulent conveyance action to this Court. Thus, whether or not the Trustee might avoid the transfer pursuant to 11 U.S.C. § 544(b) for the benefit of all unsecured creditors need not be addressed.

of lis pendens does not of itself create any interest in the property, nor does it create any superior rights for the litigant who files the notice.").

The Notice of Lis Pendens serves as constructive notice to third parties for "the purposes of protecting [third party] purchasers or encumbrancers from becoming embroiled in the dispute." *See, e.g., Chiusolo v. Kennedy,* 614 So.2d 491 (Fla.1993); *see also Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972) ("The purpose of a lis pendens is to notify prospective purchasers and encumbrancers that any interest acquired by them in the property in litigation is subject to the decree of the court."). Thus, the filing of a Notice of Lis Pendens did not create a lien in favor of FBC that attached before the Debtor's property acquired its homestead status.[6]

*Did the Debtor Intend to Defraud Creditors on June 3, 1994*

It is recognized under Florida law that where property is purchased by a debtor and title is taken in the name of another to avoid creditors, the deed may be set aside as a fraudulent conveyance. *In re Sperry,* 101 B.R. 763, 766 (Bankr.M.D.Fla. 1989) (citations omitted). A conveyance is fraudulent when the owner of real property has sought to place the land beyond the reach of creditors. *Id.*

FBC was a creditor of the Debtor based upon an indebtedness of approximately $340,000.00. The Debtor defaulted on the loans due to an unproductive watermelon harvest. On June 3, 1994, the Debtor transferred the Lake County property to the Herschlebs with a warranty deed for no consideration.

The Debtor retained exclusive use and control over the property despite the transfer of

title to the Herschlebs. The Herschlebs did not reside on the Lake County property and the Debtor continued to use it during the summers. The Debtor paid all real property taxes even though the Herschlebs possessed bare legal title. The Debtor executed the transfer because he was afraid of losing the Hendry County property and wanted a place to live in Lake County if he lost the Hendry County property. The Debtor, on his own terms, had the Herschlebs reconvey the Lake County property back to him on December 19, 1996 after fearing imminent foreclosure of the Hendry County property.

The Debtor contends the voluntary reconveyance placed the Debtor in the same position that existed prior to the June 1994 transfer; therefore, this transfer did not harm FBC's rights to foreclose on the property. Arguably, the transaction returned the parties to the status quo ante the June 1994 transfer and FBC could have foreclosed on the property prior to December 20, 1996, if a proper judgment lien was recorded. However, it is impossible to ascertain what rights other creditors might have exercised during the two-year period of concealment. If the property had remained in the Debtor's possession, it is likely the property could have been sold in order to satisfy other pre-existing debts. The Debtor's reconveyance thus did not purify the original tainted transfer. The June 1994 conveyance was accomplished for the purpose of placing land beyond the reach of creditors with the intent to defraud them.

*The Effect of Fraud on Homestead Property*

The issue is whether a debtor's intent to defraud creditors can be a basis for disallowing Florida's homestead exemption provided under Art. X, § 4 of the Florida Constitution.[7] Resolution of this question requires an

---

6. Because FBC's judgment lien was not valid until January 27, 1997, and the Notice of Lis Pendens did not create nor enforce any kind of lien on the Lake County property, the Debtor's homestead was established free and clear of such claimed interests. FBC is not a perfected judgment creditor entitled to relief pursuant to 11 U.S.C. § 362(d)(1). FBC's Motion for Relief From Stay (Doc. 13) is due to be denied.

7. FBC's objection to Debtor's homestead exemption does not concern the transfer of nonexempt assets to exempt property. As FBC concedes, Section 222.30, Fla.Stat., is not implicated. *See In re Thomas,* 172 B.R. 673, 674 (Bankr.M.D.Fla. 1994). Thus, a challenge to homestead based upon it being the result of a fraudulent asset conversion is not under consideration in the present case.

analysis of the homestead guarantee and the body of decisional law evolving in Florida.

■■■■■ Homestead laws should not be used to shield fraud or reprehensible conduct. *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127 (1925). The remedy for "[m]ost of the[se] cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase or improve the homestead." *Butterworth v. Caggiano*, 605 So.2d 56, 60 n. 5 (Fla.1992). An equitable lien is defined as a right, not recognized at law, to have a specific property or its proceeds applied in payment of a particular debt. The two basis for an equitable lien are by written contract or on equity grounds to prevent unjust enrichment. *Jones*, 106 So. at 129.

■■■■ Other Florida cases take a divergent view regarding this exemption finding the homestead as inviolable regardless of the debtor's intent or malfeasance. *See, e.g., Butterworth v. Caggiano*, 605 So.2d at 60 (homestead is exempt from civil and criminal forfeiture under Florida's RICO Act "because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated");[8] *Olesky v. Nicholas*, 82 So.2d 510, 513 (Fla.1955) ("We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision."); *Hill v. First Nat'l Bank of Marianna*, 79 Fla. 391, 84 So. 190, 193 (1920) (homestead protected from payment of debts since it "would permit defendants to do indirectly what they are enjoined from doing directly, and thereby defeat the beneficial purpose of the law.").[9] The sanctity of Florida's homestead prohibits the disallowance of a debtor's home even if the home was established with the intent to defraud creditors.

*See also Bank Leumi Trust Company of New York v. Lang*, 898 F.Supp. 883 (S.D.Fla. 1995); *In re Clements*, 194 B.R. 923 (Bankr. M.D.Fla.1996); *In re Popek*, 188 B.R. 701 (Bankr.M.D.Fla.1995); *In re Miller*, 188 B.R. 302 (Bankr.M.D.Fla.1995).

■■■■ Florida's Constitution prohibits civil forfeiture of homestead property based upon the equitable exception grounds even though the proceeds of an illegal or fraudulent activity are used to purchase the property. *Tramel v. Stewart*, 697 So.2d 821 (Fla. 1997). There is a critical distinction between the imposition of an equitable lien versus the forced sale of a homestead. Once property has been charged with an equitable lien, possession remains with the debtor who holds the proprietary interest. *Jones*, 106 So. at 129. The charge on the property can only be enforced in equity. *Id.*

■■■■ Reconciling the divergent Florida cases regarding what remedies are available for fraud and illegal activity, *Tramel* confirmed "[a]lthough this Court has permitted equitable liens to be imposed beyond the literal language of the constitutional homestead guarantee, see *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So.2d 267, 270 (Fla.1993), we agree … that the State does not have a right to forfeiture of a homestead on the basis of an equitable lien under the circumstances of this case." *Id.* at 824. Therefore, even where a debtor has utilized funds procured by fraud or improper conduct to purchase, improve or invest in homestead property, the Florida Supreme Court has refused to award forfeitures as an appropriate remedy. The exclusive relief available to an aggrieved party due to fraud is the imposition of an equitable lien on the homestead.

■■■■ The homestead provision is to be liberally construed in favor of maintaining the homestead property. *See, e.g., Butter-*

8. The three exceptions enumerated in this provision are: (1) payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement, or repair thereof; and (3) obligations contracted for house, field, or other labor performed on the realty.

9. The Eleventh Circuit Court of Appeals in *Key Bank of Maine v. Jost (In re Jost)*, 136 F.3d 1455

(11th Cir.1998) recently discussed in dicta the ambiguities in case law emanating from Florida as to whether a debtor's intent to defraud creditors can be a basis for denying homestead status. Because the bankruptcy court did not make a finding whether the transfers in *Jost* were made with the intent to defraud creditors, *Jost* did not decide the effect an intent to defraud creditors has on homestead property.

*worth v. Caggiano,* 605 So.2d 56, 58 (Fla. 1992). The Debtor clearly manifested intent to defraud creditors by placing the Lake County property outside the reach of creditors. Indeed, this act merits strict scrutiny by this Court regardless of the limitations imposed by law. However, without clearer guidance by the Florida Supreme Court, the Debtor's conduct in establishing homestead cannot result in the loss of Florida homestead property. The Debtor's claim of homestead on his Lake County property cannot be forfeited since no legal or equitable basis exist under Florida's constitutional provision denying homestead based upon a debtor's intent to defraud creditors.

*Conclusion*

The Debtor's Lake County property is homestead property exempted from his bankruptcy estate pursuant to 11 U.S.C. § 522(b). Neither the judgment lien nor the lis pendens notice filed by FBC are valid liens encumbering the Debtor's Lake County property when he established homestead on December 20, 1996.

The motion for relief from stay (Doc. 13) filed by FBC is due to be denied. The amended objection to Debtor's claim of exemption (Doc. 33) is due to be denied.