PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/10/99
THOMAS K. KAHN
CLERK

_____

No. 97-2277
_____

D. C. Docket No. 95-30585/RV
Bankruptcy Court No. 92-04836

IN RE: ELMER C. HILL,

Debtor.

HAVOCO OF AMERICA, LTD.,

Plaintiff-Appellant,

versus

ELMER C. HILL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 10, 1999)**

Before BIRCH and DUBINA, Circuit Judges, and SMITH[*], District Judge.
BIRCH, Circuit Judge:

_____

[*]Honorable C. Lynwood Smith, U.S. District Judge for the Northern District of
Alabama, sitting by designation.

Havoco of America, Ltd. ("Havoco") appeals the denial of its objection to Elmer C. Hill's ("Hill") claims in his Chapter 7 bankruptcy petition that the real property located at 209 and 211 Calhoun Avenue, Destin Florida, (the "Destin Property") was exempt under Article X, Section 4 of the Florida Constitution ( the "homestead exemption") and that the household furnishings in the Destin Property were exempt because he owns them in tenancy-by-the-entireties with his wife (the "tenancy-by-the-entireties exemption"). Havoco claims that Hill converted non-exempt assets into these exempt assets with the intent to hinder, delay, or defraud his creditors. The bankruptcy court found that under Florida law Hill was not prohibited "from converting non-exempt assets into a homestead, even if done with the intent to place those assets beyond the reach of his creditors." EXH. vol. 1-243 at 9.[1] The bankruptcy court further found that, although Hill's "creation of a tenancy by the entireties with the intent to defraud creditors may be attacked under Florida law[,] ... [s]uch attack must be made in the context of an adversary proceeding." Id. Accordingly, the bankruptcy court denied both of Havoco's objections, and the district court affirmed. Although we agree with the district court that Havoco may only challenge the tenancy-by-the-entireties exemption in an adversary proceeding, we

---

[1]Citations to EXHIBIT vol. 1 ("EXH.") within this opinion refer to that portion of the record labeled "Record of Appeal, Elmer C. Hill, Volume 1 of 1, U.S. Bankruptcy Case No. 92-04836, U.S. District Case No. 95-30585-RV."

2

believe that the applicability of the homestead exemption to this case raises an important issue of state law that would best be decided by the Supreme Court of Florida. Therefore, we AFFIRM IN PART and CERTIFY a question of state law to the Supreme Court of Florida.

## I. BACKGROUND

In 1981, Havoco filed suit against Hill claiming damages for fraud, conspiracy, tortuous interference with contractual relations, and breach of fiduciary duty. Havoco alleged that Hill conspired to eliminate Havoco as a principal under its ten year contract to supply coal to the Tennessee Valley Authority. After several appeals to the Seventh Circuit, Havoco's case finally came to trial nine years later. The jury found for Havoco on all its claims against Hill and awarded Havoco $15,000,000 in damages. The district court entered judgment in accordance with the jury verdict on December 19, 1990, and the judgment became enforceable on January 2, 1991.[2]

Hill purchased the Destin property on December 30, 1990. Although he was a long-time resident of Tennessee, Hill claims that he intended to make the Destin

---

[2]The facts underlying the judgment Havoco received against Hill are detailed in Havoco of America, Ltd. v. Sumitomo Corp. of America, 971 F.2d 1332 (7th Cir. 1992) (adopting the factual findings of the district court). Hill continues to dispute these facts.

3

property his retirement home. He paid approximately $650,000 in cash for the Destin property. Additionally, approximately $75,000 of household furnishings were purchased for the Destin property utilizing funds drawn from a Florida bank account Hill held jointly with his wife and from Hill's individual accounts in Florida and Tennessee.

On July 22, 1992, Hill filed for Chapter 7 bankruptcy in the Northern District of Florida. In his petition, he claimed that the Destin property was exempt under the Florida constitution as his homestead. He also claimed that the furnishings were exempt as property held in tenancy-by-the-entireties with his wife. Havoco objected to both exemptions. Havoco claimed that Hill engaged in improper pre-bankruptcy planning in order to convert non-exempt assets into exempt assets for the purpose of placing the assets beyond the reach of creditors, such as Havoco.

The bankruptcy court held an evidentiary hearing on Havoco's objections. During the evidentiary hearing, Havoco attempted to present evidence of the transfer of other non-exempt assets by Hill in order to demonstrate that the purchase of the Destin property and home furnishings were part of a larger scheme to defraud Hill's creditors via bankruptcy. The bankruptcy court found that this evidence was irrelevant and did not allow Havoco to present fully its evidence regarding Hill's alleged bankruptcy scheme. After the hearing, the bankruptcy court issued its

Findings of Fact and Conclusions of Law overruling Havoco's objections. See EXH. vol. 1-138, In re Hill, 163 B.R. 598 (Bankr. N.D. Fla. 1994). Relying on similar cases, the bankruptcy court concluded that, although "a debtor loses his entitlement to claim as exempt any asset converted with the specific intent to defraud creditors," EXH. vol. 10148 at 8,[3] Havoco had not proven by a preponderance of the evidence that Hill had acted with the specific intent to defraud his creditors when he purchased the Destin property and home furnishings. Additionally, the bankruptcy court found that the home furnishings were held by Hill and his wife as tenancy-by-the-entireties and, thus, were exempt from claims by Hill's individual creditors.

Havoco appealed the bankruptcy court's factual findings and legal conclusions. On February 3, 1994, the district court issued an order reversing the bankruptcy court's conclusion that there was an exception to the homestead exemption when a debtor acted with the specific intent to defraud his creditors and its finding that Havoco had failed to prove Hill acted with the intent to defraud his creditors when he purchased the Destin property and household furnishings. The district court found

[3]The bankruptcy court cited several bankruptcy cases within the Middle District of Florida for this proposition. In re Coplan, 156 B.R. 88, 91 (Bankr. M.D. Fla. 1993); In re Mackey, 158 B.R. 509, 512 (Bankr. M.D. Fla. 1993); In re Rightmyer, 156 B.R. 690, 692-3 (Bankr. M.D. Fla. 1993); In re Swecker, 157 B.R. 694, 695-6 (Bankr. M.D. Fla. 1993); In re Schwarb, 150 B.R. 470, 472 (Bankr. M.D. Fla. 1992); In re Ehnle, 124 B.R. 361, 363 (Bankr. M.D. Fla. 1991). EXH. vol 1-138 at 8-10.

that Florida state law governed questions regarding the homestead exemption and, therefore, that the bankruptcy court had erroneously relied upon the interpretations of federal bankruptcy courts sitting in Florida. [4] The district court instructed the bankruptcy court on remand "to determine whether and under what circumstances Florida law prevented debtors in 1990 and 1991 from converting non-exempt property to exempt property." EXH. vol. 1-220 at 17. The district court further instructed the bankruptcy court that, if it should determine that Hill's claim to the homestead and entireties exemption was limited under Florida law, the bankruptcy court should conduct a new evidentiary hearing to determine whether Hill purchased the Destin property and home furnishings with the intent to defraud his creditors. The district court additionally found that, if a new evidentiary hearing was necessary, the bankruptcy court should consider Havoco's evidence of Hill's other transfers of non-exempt assets as a relevant part of Havoco's claim that Hill had purchased the Destin property and furnishings with the intent to defraud his creditors. Finally, the district

---

[4]The district court also noted that other federal bankruptcy courts sitting in Florida had "refused to recognize a rule denying debtors an exemption otherwise allowed under Florida law because the debtor engaged in pre-bankruptcy planning." EXH. vol. 1-220 at 8 (citing In re Barker, 168 B.R. 773 (Bankr. M.D. Fla. 1994); In re Davidson, 164 B.R. 782, 787 (Bankr. S.D. Fla. 1994), rev'd in part on other grounds,178 B.R.544 (S.D Fla. 1995); In re Primack, 89 B.R. 954, 958-59 (Bankr. S.D. Fla. 1988)).

court affirmed the bankruptcy court's finding that the household furnishings for the Destin property were owned by Hill and his wife as tenants-by-the-entireties.

On remand, the bankruptcy court, relying upon Bank Leumi Trust Co. of New York v. Lang, 898 F.Supp. 883 (S.D. Fla. 1995) and Butterworth v. Caggiano, 605 So.2d 56 (Fla. 1992), concluded that "simply purchasing a home with 'clean' funds, even done with the intent to hinder creditors, cannot overcome the Florida homestead exemption." EXH. vol. 1-243 at 4. Further, the bankruptcy court concluded that Florida's fraudulent conveyance statute did not "affect the debtor's right to the homestead exemption." Id. at 5. However, the bankruptcy court did find that "Florida fraudulent conveyance law has been properly applied to situations involving tenancies by the entireties." Id. at 7 (citing Valdivia v. Valdivia, 593 So.2d 1190, 1192 (Fla. Dist. Ct. App. 1992)). Thus, Havoco did have a valid basis to challenge Hill's conversion of non-exempt assets into assets exempt as jointly held property. However, the bankruptcy court further concluded that it would be improper "to 'collapse' the issue of the alleged fraudulent conveyance of assets into an objection to the exemption of assets," id. at 8, and that Havoco should attack the creation of a tenancy-by-the-entireties in an adversary proceeding to avoid the transfer. Id. at 9.

The district court, in an order dated February 7, 1997, affirmed the bankruptcy court's decision. The court emphasized that Havoco may not utilize an objection to

7

challenge the conversion of non-exempt assets into assets exempt as tenancy-by-the-entirety property, but must seek to avoid the transfer as a fraudulent conveyance in an adversary proceeding. R1-13 at 2. Havoco appeals this order.

## II. DISCUSSION

We review the bankruptcy court's factual findings, as accepted by the district court for clear error, and the district court's determinations of law de novo. In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996). The primary focus of Havoco's appeal is the legal conclusions reached by the district court. On appeal, Havoco argues that its objection to Hill's claim of a tenancy-by-the-entireties exception should be dealt with in the same manner as any other objection to exemption and that Hill can adequately represent the interests of his wife in the objection proceeding or his wife could intervene in the objection proceedings. With regard to the homestead exemption, Havoco argues that the principles and spirit of the Florida constitution require that the homestead exemption not be used as an instrument of fraud.

## A. THE TENANCY-BY-THE-ENTIRETIES EXEMPTION

Havoco does not contest the bankruptcy court's finding that the household furnishings in question are owned by Hill and his wife as tenants by the entireties. A

8

tenant by the entireties holds "an indivisible right to own and occupy the entire property." United States v. 15621 S.W. 209th Ave., Miami, Fla., 894 F.2d 1511, 1515 (11th Cir. 1990) (holding that property used by its owner to facilitate a controlled substance transaction is exempt from forfeiture when held by the entireties with an innocent spouse). Under Florida law, "[n]either spouse can sell, forfeit or encumber any part of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition." Id. at 1514 (quoting Parrish v. Swearington, 379 So.2d 185,186 (Fla. Dist. Ct. App. 1980) (per curiam)). Further "[c]reditors cannot levy on entireties property to satisfy the debt of an individual spouse." Id. at 1515. see also First Nat. Bank of Leesburg v. Hector Supply Co., 254 So.2d 777, 781 (Fla. 1971) (refusing to allow a bank account held in tenancy-by-the-entireties to be garnished as a result of the individual debts of one tenant).

In accordance with these principles, property held by a debtor as a tenant-by-the-entireties is exempt from the claims of individual creditors in bankruptcy under Florida common law. See 11 U.S.C. § 522(b)(2)(B)[5]. See also In re Hendricks, 237

---

[5]§ 522(b)(2)(b) provides in pertinent part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ...

> (2)(b) any interest in property in which the debtor had, immediately before the commencement of the case, an

B.R. 821, 824 (Bankr. M.D. Fla. 1999).  Cf.  Sumy v. Scholssberg, 777 F.2d 921, 928 (4th Cir. 1985) (interpreting Maryland law).  However, when tenancy-by-the-entireties property is created via a fraudulent conveyance, it may be avoided as such.  See Thomas J. Konrad & Assoc., Inc. v. McCoy, 705 So.2d 948 (Fla Dist. Ct. App. 1998); Valdivia v. Valdivia, 593 So.2d 1190, 1192 (Fla. Dist. Ct. App. 1992).  See also In re Hendricks, 237 B.R. at 824.

Avoiding the transfer which created a tenancy-by-the-entireties will necessarily eliminate the property rights of one of the tenants.  Therefore, a court may not avoid such a transfer, and thereby make the tenancy-by-the-entireties property available to the creditors of one tenant, without affording both tenants their rights to due process. Accordingly, a plaintiff seeking to avoid the creation of tenancy-by-the-entireties property on the basis that the estate resulted from a fraudulent transfer "must join both tenants in the proceedings."  Ellis Sarasota Bank & Trust Co. v. Nevins, 409 So.2d 178, 180 (Fla. Dist. Ct. App. 1982) (requiring joinder of the debtor's wife in proceedings "before an entireties account can be made available to answer for the judgment debts of one of the tenants individually").        Havoco suggests that a

_____

interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

tenancy-by-the-entireties exemption in bankruptcy can be adjudicated in the same manner as any other objection to an exemption and that joinder of Hill's wife is unnecessary because Hill, by himself, can raise all the "defenses" in the objection proceeding which he or his wife could raise in an adversary proceeding. Havoco further argues that Hill's wife could intervene in the objection proceeding or file her own declaratory proceeding in the bankruptcy court. However, Havoco does not provide, nor are we able to find, any legal support for its suggestions. Havoco further asserts that requiring it to challenge Hill's tenancy-by-the-entireties exception in an adversary proceeding "merely exalts form over substance." Havoco is correct that in its observation "that the distinction between setting aside a transfer as fraudulent and declaring an otherwise exempt asset to be non-exempt achieves, from their perspective, the same outcome." However, "it is ... a very real distinction that is provided for by Florida law." Levine v. Weissing, 134 F.3d 1046, 1052 (11th Cir. 1998). Moreover, we do not believe that Hill's wife's due process rights are adequately preserved in a proceeding to which she is not a party and in which her property rights may effectively be terminated.[6] See Meyer v. Faust, 83 So.2d 847, 848

---

[6]If Havoco's objection to Hill's exemption of the home furnishings from the bankruptcy estate as tenancy-by-the-entireties property succeeds, the home furnishings will become a part of the bankruptcy estate, available to satisfy Hill's individual creditors, and, consequently, Hill's wife's property interest in the home furnishings will be effectively terminated.

(Fla. 1955); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433-434, 102 S. Ct. 1148, 1156-1157, 71 L. Ed. 2d 265 (1982) (holding that the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim).

Additionally, Bankruptcy Rule 7001 requires a bankruptcy trustee to initiate adversary proceedings to avoid transfers by the debtor under section 548 of the Bankruptcy Code. See 11 U.S.C. § 548. Florida's fraudulent conveyance statute is sufficiently similar to § 548 to expect federal bankruptcy courts to apply comparable procedures when considering whether to avoid a purportedly fraudulent transfer under Florida law.[7] Cf. In re Golden Plan of California, Inc., 829 F.2d 705, 711 (9th Cir. 1986) ("emphasizing that the trustee's initiation of adversary proceedings was a prerequisite to a legitimate exercise of its avoidance powers") . Therefore, we agree with the district court that Havoco must seek to avoid the transfer by which Hill transformed his individual property into home furnishings owned with his wife as tenants-by-the-entireties through an adversary proceeding to which Hill's wife may be made a party.

B.  THE HOMESTEAD EXEMPTION

---

[7]Compare 11 U.S.C. § 548 with Fla. Stat. chs. 726.105, 222.29, and 222.30.

12

The exemption of a debtor's homestead from process in Florida is constitutionally protected.  See Fla. Const. Art. X, § 4.[8]  Relying upon the interpretation of Florida law provided in Bank Leumi, the bankruptcy court concluded that the homestead exemption would apply even if Hill had purchased the Destin property with the intent to hinder, delay, or defraud creditors.  See EXH. vol. 1-243 at 4.  This finding allowed the bankruptcy court to deny Havoco's objection without holding another evidentiary hearing to consider Havoco's evidence that Hill had purchased the Destin property as part of a larger scheme to defraud his creditors via bankruptcy.

We have previously considered the Bank Leumi case and, nonetheless, concluded that this "is a significant question of Florida law with respect to which the Florida precedent is not clear."  In re Jost, 136 F.3d 1455,1458-59 (11th Cir. 1998)

---

[8]Article X, § 4(a) of the Florida Constitution provides for an unlimited exemption as follows:

> Homesteads– exemptions (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead....

Fla. Const. art. X, §4(a)(1).

13

(stating that "[i]f the <u>Bank Leumi</u> issue were necessarily presented in this case, we would certify the question to the Florida Supreme Court").[9]  The case at bar requires resolution of the question whether the Florida homestead exemption applies when a debtor engages in pre-bankruptcy planning and uses non-exempt assets to purchase a homestead with the intent to hinder, delay, or defraud his creditors.  Because the homestead exemption is an important part of Florida law, we will set out this question in some detail and certify it to the Florida Supreme Court.

Federal courts attempting to interpret Florida law regarding this issue have reached contrary conclusions.  <u>Compare</u> <u>In re Mesa</u>, 232 B.R. 508 (Bankr. S.D. Fla. 1999) (imposing an equitable lien on homestead); <u>In re Kravitz</u>, 225 B.R. 515 (Bankr. D. Mass. 1998) (denying the homestead exemption when debtor acted with actual fraudulent intent); <u>In re Bandkau</u>, 187 B.R. 373 (Bankr. M.D. Fla. 1995) (denying the homestead exemption to the extent that it was purchased with non-exempt money); <u>In re Thomas</u>, 172 B.R. 673, 674 (Bankr. M.D. Fla. 1994) (granting an objection to a claimed homestead exemption under Fla. Stat. § 220.30); <u>In re Coplan</u>, 156 B.R. at 92 (limiting the homestead exemption when the homestead was acquired in fraud of

---

[9]While we have previously commented on the "sacrosanct" nature of the homestead exemption, we have never been squarely faced with the issue at hand or rendered a decision based upon it.  <u>See</u> <u>Levine</u>, 134 F.3d at 1051 (citing <u>Heddon v. Jones</u>, 154 So. 891 (1934)).

creditors); In re Grocki, 147 B.R. 274, 278 (Bankr. S.D. Fla. 1992) (imposing an equitable lien on homestead); In re Gherman, 101 B.R. 369, 370 (Bankr. S.D. Fla. 1989) (sustaining objection to homestead exemption where debtor used fraudulently converted funds to purchase a homestead) with Bank Leumi, 898 F.Supp. at 887 (refusing to create a non-textual exception to the homestead exemption based upon the fraudulent intent of the debtor); In re Hendricks, 237 B.R. at 825 (allowing the homestead exemption); In re Young, 235 B.R. 666 (Bankr. M.D. Fla. 1999) (holding that the homestead exemption could not be disallowed because nonexempt assets were used to acquire homestead even if debtor fraudulently converted nonexempt assets with the intent to defeat creditor's claims); In re Lazin, 221 B.R. 982, 988 (Bankr. M.D. Fla. 1998) (finding that conversion of non-exempt assets into homestead with the intent to hinder, delay, or defraud creditors is not an exception to the homestead exemption); In re Lee, 223 B.R. 594 (Bankr. M.D. Fla. 1998) (finding debtor's intent to defraud creditors did not constitute a basis for disallowing Florida homestead exemption); In re Statner, 212 B.R. 164 (Bankr. S.D. Fla. 1997) (allowing the homestead exemption); In re Clements, 194 B.R. 923 (Bankr. M.D. Fla. 1996) (holding that a debtor is entitled to keep the homestead as exempt even if it was acquired in fraud of creditors); In re Miller, 188 B.R. 302 (Bankr. M.D. Fla. 1995) (upholding a homestead exemption even though its purchase was a fraudulent transfer

15

as to the creditors); In re Popek, 188 B.R. 701 (Bankr. S.D. Fla. 1995) (allowing the homestead exemption); In re Lane, 190 B.R. 125 (Bankr. S.D. Fla. 1995) (allowing the homestead exemption).

Those courts which have found that the debtor is entitled to the homestead exemption even if the homestead was acquired using non-exempt assets with the intent hinder, delay, or defraud creditors have relied primarily upon Butterworth v. Caggiano, 605 So.2d at 56. See, e.g., Bank Leumi, 898 F. Supp. at 887-889. In Caggiano, the Florida Supreme Court reasoned that a homestead was exempt from civil or criminal forfeiture under Florida's RICO statute because forfeitures were not included in the three enumerated exceptions to the homestead exemption.[10] Id. The court noted that it utilized a "liberal, nontechnical interpretation of the homestead exemption and a strict construction of the exceptions." Id. at 61. Further, the court cited with approval the Supreme Court of Kansas's holding that the exceptions to the homestead provision of the Kansas Constitution were "unqualified" and particularly its finding that the exceptions "create no personal qualifications touching the moral character of the resident nor do they undertake to exclude the vicious, criminal, or the

---

[10]The three explicit exceptions to the homestead exemption are: (1) unpaid property taxes on the homestead itself, (2) mortgages for the purchase or improvement of the homestead, and (3) mechanic's liens for work performed on the homestead. Fla. Const. Art. X, §4.

16

immoral from the benefits they so provide." Id. at 60 (quoting State ex re. Apt v. Mitchell, 399 P.2d 556, 558 (Kan. 1965) and finding that "Florida law likewise prohibits the implication of limitations to article X"). Based upon this analysis, federal courts have concluded that an exception for fraud can not be implied to limit the homestead exemption.

Those courts which have limited or disallowed the homestead exemption when debtors engaged in pre-bankruptcy planning to convert non-exempt assets into a Florida homestead with the intent to hinder, delay, or defraud creditors have relied upon the Florida Supreme Court's subsequent ruling in Palm Beach Sav. and Loan Ass'n v. Fishbein, 619 So.2d 267 (Fla. 1993). See, e.g., In re Kravitz, 225 B.R. at 520-21. Here the court, in a four-three decision, allowed the creditor to enforce an equitable lien against the homestead because the circumstances of the case fell within the "spirit of the exceptions" to Article X.[11] Id. at 270. The court reviewed the relevant Florida case law and concluded that "it is apparent that where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4." Id. at 270 (citing Jones v.

---

[11]The three dissenting justices in the Fishbein case stood by the court's previous ruling in Caggiano and were "disinclined to have the Court impose an equitable lien on homestead in clear violation of the constitution." Fishbein, 619 So.2d at 271 (Shaw, J. dissenting) (citing Public Health Trust v. Lopez, 531 So. 2d 946 (Fla. 1988) and Wilhelm v. Locklar, 35 So. 6 (Fla. 1903)).

17

Carpenter, 106 So. 127, 130 (Fla. 1925); La Mar v. Lechilider, 185 So. 833, 836 (Fla. 1939); Sonneman v. Tuszynski, 191 So. 18 (Fla. 1939); Craven v. Hartley, 135 So. 899 (1931); Ryskind v. Robinson, 302 So. 2d 427 (Fla. Dist. Ct. App. 1974)). The court further noted that "the homestead exemption is intended to be a shield, not a sword." Id. at 271. Based upon this analysis, some federal courts have attempted to prevent the homestead exemption from being "applied so as to make [it] an instrument of fraud or imposition upon creditors," Jones v. Carpenter, 106 So. 127, 130 (Fla. 1925), and, in so doing, have implied an exception based on the debtor's fraud to the homestead exemption. See, e.g., In re Thomas, 172 B.R. at 674.

More recently, federal courts have attempted to interpret the Florida Supreme Court's synthesis of Caggiano and Fishbein in Tramel v. Stewart, 697 So.2d 821 (Fla. 1997). In Tramel, the Court held that the homestead exemption does not allow forfeiture of a homestead based upon Florida's Forfeiture Act. Id. at 824. Courts have either emphasized the Florida Supreme Court's refusal to extend the enumerated exceptions to the homestead exemption, see, e.g., In re Lee, 223 B.R. at 601, or focused upon the Florida Supreme Court's favorable citing of Fishbein and Jones. See, e.g., In re Mesa, 232 B.R at 512. The latter courts note that Florida Supreme Court has not retreated from "the rule stated in Jones that a homestead cannot be

18

employed as an instrumentality of fraud." Id. Applying Tramel, courts continue to

reach inapposite conclusions, and, thus, the issue remains unresolved.[12]

Similarly, courts are split regarding the impact of Fla. Stat. §§ 222.29 and

222.30. In 1993, the Florida legislature amended the Florida Code specifically to

make the conversion of a non-exempt asset into an exempt asset with the intent to

hinder, delay, or defraud the creditors a fraudulent asset conversion. See Fla. Stat. §

222.30(2).[13] Courts have spilt as to whether this statute is applicable to the homestead

conversion. Compare In re Hendricks, 237 B.R. at 824-825 (finding § 222.29

inapplicable to the homestead exemption because, by its terms, it only applies to

_____

[12]Adding to the confusion in this area is the conclusion of some courts that, although a debtor's fraudulent conversion of non-exempt assets into a homestead does not provide a basis for denying him the homestead exemption, the debtor's fraudulent transfer may serve as the predicate for denying the discharge. See, e.g. Marine Midland Bank, N.A. v. Mollon, 160 B.R. 860 (M.D. Fla. 1993) (denying discharge under 11 U.S.C. §727(a)(2)(A) when the "[d]ebtor who clearly by law is entitled to convert nonexempt assets to exempt assets did so in this case with a fraudulent intent"); In re Hendricks, 237 B.R. at 826; In re Young, 235 B.R. at 671.

[13]Fla. Stat. §222.30(2) states in pertinent part"

> Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.

19

exemptions within Fla. Stat. Ch. 222 and statutory laws cannot impair constitutional rights) with In re Thomas, 172 B.R. at 674 (holding that §§ 222.29 and 222.30 bar homestead exemptions resulting from fraudulent asset conversions). While Fla. Stat. §§ 222.29 and 222.30 were not in effect at the time of this case, we have previously concluded that §222.30 was "an effort to provide a clearer, more direct response to fraudulent transfers" of the sort at issue here. Levine, 134 F.3d at 1053. Therefore, transfers which would be avoidable as fraudulent under §§ 222.29 and 222.30 were also previously avoidable under § 726.105. Id.

In sum, the issue of whether a claimed Florida homestead exemption can be successfully challenged if the home was purchased with non-exempt assets with the actual intent to hinder, delay, or defraud creditors in violation of Fla. Stat. § 726.105 is an unsettled question of Florida law.[14] Because the answer to this question is dispositive of the claims in this case and because it raises important issues of state

_____

[14]For further discussion of this issue see Jules S. Cohen, The Use of the Florida Homestead to Defraud Creditors, 72-DEC Fla. B.J. 35 (1998); Greta K. Kolcon, Common Law Equity Defeats Florida's Homestead Exemption, 68-NOV Fla. B.J. 54 (1994); David E. Peterson, Robert F. Higgins, & Matthew E. Beal, Is the Homestead Subject to the Statute of Fraudulent Assets Conversions?, 68-DEC Fla. B.J. 12 (1994); Richard Blackstone Webber, II, Florida's Homestead Exemption in the Eye of the Hurricane, 71-APR Fla. B.J. 60 (1997); R. Wade Wetherington, Eleventh-Hour Conversions: A Journey into the Labyrinth of Prebankruptcy Planning, 69-JAN Fla. B.J. 18 (1995).

law, we certify the following question to the Supreme Court of Florida pursuant to Fla. Stat. Ch. 25.031 (1997) and Fla. R. App. P. 9.150:

> DOES ARTICLE X, SECTION 4 OF THE FLORIDA CONSTITUTION EXEMPT A FLORIDA HOMESTEAD, WHERE THE DEBTOR ACQUIRED THE HOMESTEAD USING NON-EXEMPT FUNDS WITH THE SPECIFIC INTENT OF HINDERING, DELAYING, OR DEFRAUDING CREDITORS IN VIOLATION OF FLA. STAT. § 726.105 OR FLA. STAT. §§ 222.29 and 222.30?

The phrasing of this certified question is not intended to limit the Supreme Court's consideration of the various issues posed by this case. The entire record and the briefs of the parties shall be transmitted to the Supreme Court of Florida to assist in its determination.

## III. CONCLUSION

Because we find that Hill's wife is an indispensable party to Havoco's claim that Hill fraudulently converted his individual property into home furnishings which they owned as tenants-by-the-entireties, we conclude that Havoco must seek to avoid this transfer in an adversary proceeding. Therefore, we AFFIRM the district court's denial of Havoco's objection to this claimed exemption. Because we believe that state

21

law issues are dispositive of Havoco's objection to Hill's claim that the Destin property is an exempt homestead, we hold that portion of the case in abeyance while we await the Supreme Court of Florida's resolution of the CERTIFIED question.

AFFIRMED IN PART and CERTIFIED to the Supreme Court of Florida.