In re Edward C. **ROBEDEE**, Debtor.

Marika **Tolz**, Trustee, Plaintiff,

v.

Edward C. **Robedee**, et al., Defendants.

Bankruptcy No. 06–10759–BKC–JKO.
Adversary No. 06–1591–JKO–A.

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

April 12, 2007.

Patrick S Scott, Esq., Ft. Lauderdale, FL, for Debtor.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOHN K. OLSON, Bankruptcy Judge.

THIS CASE presents a question of exemption law under 11 U.S.C. § 522(b)(3)(B) involving property owned by the Debtor and his non-debtor spouse mostly, but not entirely, in tenancy by the entireties form, with the complicating twist that the Defendants moved from New York to Florida a few months before the Debtor filed his voluntary chapter 7 petition. The issues arise both in the context of a challenge to exemptions by the Trustee, which is pending in the Debtor's main case, and also here in this adversary proceeding in which the Trustee is attempting to bar the Debtor's discharge and to avoid the transfer of certain funds allegedly transferred by the Debtor with intent to hinder, delay or defraud creditors. The matter came before me for hearing on January 8, 2007, on the motion of the Defendants, Edward C. Robedee (the "Debtor") and his non-debtor spouse, Trisha Robedee, for summary judgment. Because there are no genuine issues of material fact, I am satisfied that it is appropriate to rule.

The Trustee here seeks a determination under 11 U.S.C. § 727(a)(2) that the Debtor should be denied his discharge as a result of transferring property to his non-debtor spouse both prepetition within one year prior to the filing of his petition on March 8, 2006, and postpetition with the intent to defraud creditors, and for failing to preserve records from which his financial condition or business, and seeks to avoid such transfers from the spouse under 11 U.S.C. § 548(a)(1)(A). In addition, the Trustee seeks a determination that the Debtor should be denied his discharge under § 727(a)(4) for failing to disclose the alleged transfers.

## Background

Until June 2005, the Robedees lived in Westchester County, New York, where the Debtor operated men's formal wear shops in Yorktown Heights and Jefferson Valley through two different corporations of which he was the sole shareholder. The corporations' inventory was subject to security interests in favor of Putnam County Savings Bank. One of the stores was closed in 2005 and its inventory moved to the other store. Mrs. Robedee had no interest in the businesses and the couple had no joint debts.

The couple's home and Mr. Robedee's surviving business were put up for sale and, as so many before them, the Robedees moved to Florida. I find on the basis of the unrebutted evidence before me that the Robedees knew nothing of Florida or New York exemption laws until the Debtor first consulted with bankruptcy counsel on January 4, 2006. Prior to that time, he had not contemplated bankruptcy because he had believed he could sell his business for enough to pay off its debts, to pay his accumulated credit card debt, and to go forward with a clean slate. It was only after the sale of the business proved severely disappointing that bankruptcy was contemplated and counsel was consulted.

The sale of the Robedee's Westchester County home, which had always been titled in the names "Edward Robedee and Trisha Robedee" and held in a tenancy by the entireties under New York law, closed on May 31, 2005 and, after paying liens, commissions, and closing costs, netted $128,203.33.[1] The Robedees deposited that amount into an account named "Edward C. Robedee and Trisha Robedee" at Putnam County Savings Bank, account # 7650. That account was likewise held in

---

1. plus $5,000 which was escrowed and is discussed below.

a tenancy by the entireties under New York law.

The Robedees moved to Florida in June after the end of their children's school year and at all relevant times thereafter stayed in rented properties. On June 8, 2005, they opened two joint accounts at Wachovia Bank, account # 705 (checking) and account # 682 (money market). At the same time, they wrote checks totaling $104,000 from Putnam account # 7650, and deposited $29,000 into Wachovia account # 705 and $75,000 into Wachovia account # 682. The balance of the sale proceeds in Putnam account # 7650 were exhausted by September 2005 through store operating expenses and living expenses.

The Robedee's had escrowed an additional $5,000 in proceeds from the sale of their home with their closing attorney. These funds were released from escrow in August 2005, and were deposited in a new Wachovia account # 1604, a 24–month certificate of deposit, titled solely in Mrs. Robedee's name.

Although he had moved his possessions to Florida and established residency here in June 2005, Mr. Robedee spent most of his days during the period from June through September 2005 in New York while running his store and trying to sell it. He spent his nights at friends' homes. In September, Mrs. Robedee's chronic illness became active and Mr. Robedee moved full time to Florida, returning occasionally to New York. His only prospective buyer for the store backed out in November. Throughout this period, he had used proceeds from the sale of the family homestead in the joint Putnam bank account to maintain the store's operations and to pay household expenses.

The Robedees' intent had been to use the net proceeds from the sale of the New York home to purchase a Florida residence. In December 2005, after yet another prospective sale of the store fell through, Mrs. Robedee insisted that her husband relinquish any further use of the home proceeds and turn the balance over to her. On December 14, 2005, she took $50,000, almost the entire balance remaining of the original $75,000 deposited in Wachovia money market account # 682, and opened a 24–month certificate of deposit in the amount of $25,000 in Wachovia account # 1713, and a money market account in the amount of $25,000 in Wachovia account # 1390. Both accounts were in her name and the name of Mr. Robedee's mother, Joy Robedee, for convenience purposes only. Joy Robedee never had any involvement in the two accounts.

The two new accounts have been used to make small advances into the household checking account, Wachovia account # 705, for household and medical expenses for the Robedees and their children, and, to some extent, for necessary costs associated with the store.

The remaining store was sold on February 17, 2006, for enough to pay its secured creditor Putnam Bank in full, and to bring the landlord current. There were no net proceeds.

In February, Mrs. Robedee opened another certificate of deposit account at Wachovia, account # 2879, to hold $5,000 in proceeds from a tort recovery by her minor daughter.[2] The account was titled in the joint names of Mrs. Robedee and her daughter; none of those funds have been touched.

---

**2.** This $5,000 account was originally confused by the Debtor with the $5,000 escrow account, leading to the latter's initial non-disclosure and giving rise to the Trustee's assertion that a discharge should be denied on the basis of non-disclosure under § 727(a)(4). The unrebutted evidence before me is that the Debtor's confusion of these two accounts was innocent.

## Debtor's claim of exemptions

The Debtor initially scheduled the following assets: cash, $50; bank account # 705, $616.09; furniture (joint), $5,747; books, $100; clothing, $75; watch and wedding ring, $50; term life insurance, $0; corporate stock, $2; and car lease, $0. He has made three amendments to his schedules: to add his 2005 income tax refunds and to correct the amount of his bank account by a few dollars. He claimed all of these assets as exempt under Florida law other than the corporate stock.

The tax refunds, arising out of his joint 2005 federal and New York state income tax returns, in the aggregate amount of $2,818, were added on March 24, 2006, less than two weeks after the petition was filed. The Debtor claimed his one-half interest in the refunds as exempt because they were held with his wife in a tenancy by the entireties. The Trustee objected to the use of Florida exemptions on May 3, 2006, since the Debtor had not lived in Florida for the minimum two year period required by 11 U.S.C. § 522(b)(3)(A). Pursuant to that provision, the Trustee asserted that only New York exemptions were available. On May 26, the Debtor made a further amendment to his schedules to make a mathematical correction and asserting New York exemptions where available.

Finally, on July 7, 2006, the Debtor made a third amendment to his schedules. He made a mathematical correction, listing half of the value of the joint income tax returns rather than the entire value. He adjusted the filing-date value of the joint bank account, to include two small deposits made between the time the schedules were signed and the petition date,[3] and made some adjustments to the claimed New York exemptions. It is in connection with this third amendment to the schedules that

both this adversary proceeding and the pending objection to the Debtor's claim of exemptions in the main case arise.

The Trustee filed this adversary proceeding on June 12, 2006. The Trustee objected to the Debtor's claim of exemptions in the main case on August 7 [CP 39] and amended on October 17, 2006 [CP 47]. The Trustee takes the position that only federal exemptions should be applied. This adversary proceeding can be understood only in the context of that objection. The Trustee has alleged that the Debtor transferred funds with the intent to hinder, delay or defraud creditors. If, as the Debtor contends, the funds at issue were exempt under applicable law, the Debtor's transfer of those funds could not have operated to hinder, delay or defraud creditors.

## Legal standard for summary judgment

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that Summary Judgment is appropriate if the court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable infer-

---

3. The parties have stipulated that the correct bank account balance on the petition date was $2,132.

ences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) *(citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

### Applicable exemptions and immunities

The parties agree that the provisions of 11 U.S.C. § 522(b)(3)(A), adopted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") operate to prohibit the Debtor from claiming any state law exemptions under Florida law because he had not been a Florida domiciliary for the entire 730 days prior to the filing of his chapter 7 case.[4] Section 522(b)(3)(A) provides that the exemptions available to a debtor who had not lived in the same state for the 730 days prior to the filing of his or her petition are those which would have been available to the debtor in the state in which he or she resided for most of the 180 days prior to the 730-day period which preceded the bankruptcy filing. Translated from the strained language of the statute into English, this means that the exemptions available to a debtor who had moved into a state less than two years before the petition was filed are those available under the law of the jurisdiction where the debtor lived for the greatest period of time between two and two and one-half years prior to filing the bankruptcy petition. In this case, the Debtor had not lived in Florida for the entire two years before his filing, and so Florida exemptions do not apply under § 522(b)(3)(A). He had lived in New York for the entire period between two and two and one-half years prior to the filing, and so the exemptions which are available to him are those available under New York law, unless New York law does not provide any exemptions for non-residents, in which case the applicable exemptions are the federal exemptions provided for under § 522(d). *See* § 522(b)'s last sentence.[5]

The parties also agree that the assets which the Debtor owned as of the petition

4. Looked at from an objective perspective, all that happened here is that the Robedees moved from one state to another. Their funds simply came with them, were held in exactly the same form as they had been before the move, and merely took on the legal characteristics of the state in which the Robedees lived. Should a debtor be denied a discharge for such a move? There is a clear Constitutional basis for the right of a citizen to travel from one state to another, based firmly in the Privileges and Immunities Clause of Article IV, § 2 of the Constitution; the Privileges and Immunities Clause of the Fourteenth Amendment; and the Due Process Clause of the Fifth Amendment. The Constitutional right to travel embraces at least three different components: (1) it protects the right of a citizen of one state to enter and to leave another state; (2) it protects the right to be treated as a welcome visitor rather than an unfriendly alien who is temporarily present in the sec-

ond state; and (3) for those who elect to become permanent residents, it protects the right to be treated like other citizens of that state. *Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). It is difficult to square the Constitutional right to travel with the curious look-back provisions inserted into the Bankruptcy Code by BAPCPA in § 522(b)(3)(A) and other places. Those provisions have the effect of tying citizens to states which they have long-since left, and preventing them from being treated like other citizens of the state into which they have moved. Since this case does not require me to reach the Constitutional issues, I shall not address them further in this opinion.

5. "If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)."

date—whether measured under New York law or § 522(d)—are exempt. The issues in the case relate to whether some or all of the cash proceeds from the sale of the Robedee's New York homestead and now held by Mrs. Robedee were fraudulently transferred to her such that they should be recovered by the Trustee for the benefit of the estate under §§ 548 and 550, or that the Debtor's discharge should be denied under § 727. These questions in this case turn on whether the funds at issue were exempt under 11 U.S.C. § 522(b)(3)(B) because they were immune from execution under Florida law.[6]

 Section 522(b)(3)(B) exempts property owned under a tenancy by the entireties if the debtor "had any interest in [that] property ... immediately before the commencement of the case" if the property at issue would be "exempt from process under applicable nonbankruptcy law." Here, all of the $104,000 taken from the Robedees' joint account at Putnam Bank, owned by them in a tenancy by the entireties form and deposited by them on June 8, 2005 into their Wachovia checking and money market accounts, were put in joint accounts. As a matter of Florida law, property owned by a husband and wife is held by a tenancy by the entireties absent some express indication to the contrary. *Beal Bank, SSB v. Almand and Associates,* 780 So.2d 45, 55–6 (Fla.2001). Accordingly, all of these funds were in a tenancy by the entireties ownership as of June 8, 2005.

### The $129,000 deposit

 Property held by a debtor in a tenancy by the entireties is exempt from

claims of individual creditors in bankruptcy under Florida law common law. *Havoco of America, Ltd. v. Hill,* 197 F.3d 1135, 1139 (11th Cir.1999). It is possible for a bankruptcy trustee to reach tenancy by the entireties property to the extent of joints debts of both spouses or to the extent that the trustee can trace a fraudulent conveyance into the property. *Id.*

The Trustee argues that although the funds had been held in a tenancy by the entireties in New York and were transferred into a tenancy by the entireties form when the Robedees moved to Florida, that the transfer of the funds into Florida was a fraudulent transfer because creditors of a single spouse could have reached such funds in New York.

I have previously held that Florida real property owned by a Florida-domiciled debtor is exempt from administration as property of the estate regardless of when the debtor became a Florida domiciliary if the debtor had, immediately before the commencement of the case, an interest in that property held in a tenancy by the entireties with a spouse. *In re Schwarz,* 362 B.R. 532 (Bankr.S.D.Fla.2007). There is no difference under § 522(b)(3)(B) whether the property at issue was real property, as in *Schwarz,* or personal property, as here. Once the property was held in a tenancy by the entireties in Florida by a Florida domiciliary like the Debtor here, that property was immune from execution under Florida law and exempt under § 522(b)(3)(B). I therefore conclude that the $129,000 deposited into the Wachovia accounts on June 8, 2005 were exempt from execution as of that date.

---

**6.** It is curious that, despite its complex tinkering with homestead exemption provisions in BAPCPA, including changes to § 522(b)(3)(A) and new §§ 522(*o*), 522(p), and 522(q), Congress determined to leave wholly intact the preexisting blanket exemption available to debtors who own property in a tenancy by the entireties form if applicable nonbankruptcy law would exempt that property from process. The range of property so exempt under Florida law is extremely broad and encompasses far more than homestead property alone.

But that does not fully answer the question as to whether the transfer of the funds from the Putnam Bank T–by–E account (where the parties agree they were non-exempt under New York law) into the Wachovia T–by–E accounts (where the funds were exempt under Florida law) was a fraudulent transfer.

In her counts seeking to avoid the Debtor's discharge under § 727(a)(2)[7] and to recover fraudulent transfers under § 548(a)(1)(A)[8], the Trustee is required to demonstrate that the transfers involved were made with the actual intent to hinder, delay, or defraud creditors.

■ Here, the Debtor and his spouse took funds held in T–by–E form in New York and deposited them in T–by–E accounts in Florida. Did the Debtor intend by such action to hinder, delay, or defraud his creditors? The only evidence in the case is that the Debtor had no such intent. He expected to sell his remaining New York business. He had no knowledge of New York or Florida exemption laws until he first consulted with his bankruptcy counsel in January 2006, after the ultimate sale proceeds proved to be far less than he had expected. The Trustee has presented no evidence to contradict the apparent innocence of the Debtor here, much less carried her burden of proof under the applicable preponderance of the evidence standard, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Accordingly, in the absence of any hint of actual intent to hinder, delay, or defraud creditors, I conclude that the transfer in June 2005 from the New York T–by–E account to the Florida T–by–E accounts cannot be avoided under § 548(a)(1) and does not form the basis for a denial of discharge under § 727(a)(2).

■ The primary characteristic of property held in a tenancy by the entireties is that each spouse owns an undivided interest in the whole. It follows from this that the subsequent transfer of a portion of the original $129,000 into accounts singularly in the name of Mrs. Robedee[9] did not offend any provision of the bankruptcy code. These funds were exempt as of June 8, 2005. They remained exempt from the claims of the Debtor's creditors, and the Trustee, at all times thereafter.

The remaining $5,000 released from escrow in August 2005 had been held by the Robedees' closing attorney from the proceeds of the sale of their New York homestead. Those funds were thus owned in New York in a tenancy by the entireties, and could have been reached by the Debtor's creditors. When these later funds were turned over to the Robedees they were placed into an account solely in the name of Mrs. Robedee and did not go through the cleansing process of being held in a tenancy by the entireties in Florida. These funds must therefore be looked at differently. While the $129,000 in sale

---

7. The court shall grant the debtor a discharge unless—

(1) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

8. The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made. . . .

9. And Joy Robedee, as a signatory of convenience but who never exercised any dominion or control over the accounts.

proceeds became exempt under § 522(b)(3)(B) as soon as they were deposited into the Wachovia T–by–E accounts, the subsequent $5,000 in sale proceeds were transferred directly from the New York T–by–E account to Mrs. Robedee's account. This transfer put these funds out of the reach of the Debtor's creditors and never enjoyed the absolute protection afforded to T–by–E funds by § 522(b)(3)(B).

### The $5,000 deposit from escrow

■ The parties have stipulated that under New York law, half of the property owned in T–by–E form is available for levy and execution by the creditors of a single spouse. Based upon that stipulation, I conclude that $2,500 of the $5,000 originally held in escrow by the Robedees' closing attorney would have been available to the Debtor's creditors prior to the transfer of the entire $5,000 to Mrs. Robedee's Wachovia account. These funds were never held in a Florida T–by–E account and were never protected from creditors' claims by the provisions of § 522(b)(3)(B). I therefore conclude that the Trustee may avoid the transfer of $2,500 from the escrow account to Mrs. Robedee as a fraudulent transfer under § 548(a)(1)(B), in that the Debtor did not receive reasonably equivalent value in exchange for the transfer, and may recover that amount for the benefit of the estate under § 550(a)(1).

### Trustee's attempt to deny discharge

■ The Debtor had initially failed to disclose the $5,000 transfer from the New York escrow account to Mrs. Robedee's Wachovia account. As noted above, the only evidence before me is that the Debtor was confused by the separate $5,000 account which arose from his daughter's tort claim. In the absence of any other indication of intent, the Trustee has failed to carry her burden of establishing that the Debtor acted with intent to hinder, delay, or defraud his creditors. The Trustee's

attempt to deny the Debtor a discharge will be denied.

Based upon the foregoing, it is OR-DERED:

1. The transfer of $2,500 from the Debtor to Trisha Robedee is hereby AVOIDED pursuant to 11 U.S.C. § 548(a)(1)(B) and judgment will enter against Trisha Robedee in that amount pursuant to 11 U.S.C. § 550(a)(1).

2. All other claims asserted by the Trustee seeking to avoid transfers against the Debtor, Trisha Robedee, or Joy Robedee, are hereby DENIED.

3. The Trustee's claim seeking to deny the Debtor a discharge is hereby DE-NIED.

4. A separate final judgment consistent herewith will be entered.